UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION



FILED
FEB 20 2009
CLERK

```
******************************************
                          *
MARVIN SMOOT,             *   CIV. 06-4084
                          *
     Plaintiff,           *
                          *   MEMORANDUM OPINION
     -vs-                 *   AND ORDER DENYING MOTION
                          *   FOR SUMMARY JUDGMENT
AMERICAN TISSUE SERVICES  *
FOUNDATION LIMITED,       *
                          *
     Defendant.           *
                          *
******************************************
```

Defendant American Tissue Services Foundation Limited has moved for summary judgment on Plaintiff Marvin Smoot's wrongful discharge claim. The parties briefed the issues and the Court heard oral argument on the motion at the pretrial conference on Monday, December 15, 2008. The Court has received and reviewed the supplemental briefs submitted by the parties after the hearing. For the reasons stated below, the motion for summary judgment will be denied.

## BACKGROUND

Plaintiff alleges he was wrongfully discharged from his employment with American Tissue Services Foundation Limited ("ATSF") because he reported problems to a supervisor and government agencies, essentially claiming whistleblower status. ATSF claims Plaintiff's employment was terminated for financial reasons as part of the company's reduction in force. Viewing the facts in a light most favorable to Plaintiff, the record establishes the following.

ATSF is a non-profit company which recovers tissue from deceased donors and provides the tissue to processors for ultimate transplantation to persons who need it. LifeShare is an Oklahoma organ recovery organization. In 2002, with Robert Turner ("Turner") serving as its Executive Director (later becoming the CEO), LifeShare began using ATSF for its tissue recovery from human

donors. Lifeshare eventually took control of ATSF and Robert Turner became the President of ATSF and the Chairman of the Board. Lifeshare provided quality assurance services for and shared employees with ATSF. During the relevant time period, the shared employees included Turner, LifeShare's Executive Director and ATSF's Chief Executive Officer, as well as the Chair of ATSF's Board of Directors, and Linda Belcher ("Belcher"), who was LifeShare's Director of Quality Assurance and ATSF's Vice-President for Quality Systems.

The tissue recovery industry is highly regulated by the Food and Drug Administration ("FDA"). According to Belcher's deposition testimony, the government closely regulates tissue recovery businesses in order to protect public safety. Under the federal regulations, 21 C.F.R. § 1271, *et seq.*, a tissue recovery agency such as ATSF must establish operating procedures to comply with "good tissue practices" in order to prevent the spread of disease through the recovered tissues. These Standard Operating Procedures ("SOPs") become the standards which the FDA requires the company to follow, and the FDA requires the company to document every violation of the SOPs. Belcher testified that the FDA has substantial enforcement power over the tissue industry, including the authority to fine the company, issue injunctions, or close the business if necessary.

During the relevant time period, ATSF's recoveries were processed by a company named Osteotech. In approximately 2004, Osteotech wanted ATSF to expand because the Red Cross (which also previously recovered tissue from donors) was getting out of the tissue business, and Osteotech was willing to help fund the expansion. Accordingly, Turner and others began working on the expansion, and in late January or early February 2005, they "kicked off" the expansion of ATSF. ATSF planned to open new locations in El Paso, Texas, the Twin Cities, Minnesota, and Syracuse, New York. ATSF hired a number of employees for this expansion. Those employees hired in early 2005 included Paul Kozloski as President and Chief Operating Officer, Duke Kasprisin, M.D., as Medical Director, and Kevin Noyes as Vice President of National Recovery. On or about May 9, 2005, Plaintiff was employed as a Director of Training for ATSF.

Plaintiff alleges that in the spring of 2005, ATSF's Medical Director and Plaintiff's supervisor, Dr. Kasprisin, became aware of quality control infractions by other employees of ATSF.[1] Plaintiff was sent to Oklahoma to review the company's SOPs. While there, Plaintiff was asked to observe a donor recovery to determine whether proper quality control procedures were being observed. Plaintiff observed numerous violations of SOPs during the recovery and he immediately reported his observations to Belcher. According to Plaintiff, Belcher rejected his conclusions and his ideas for improvement. Plaintiff told Dr. Kasprisin what happened, and Dr. Kasprisin asked Plaintiff to write a report regarding his observations. Plaintiff wrote the report and gave it to Dr. Kasprisin.

In June of 2005, Plaintiff participated in a number of telephone conferences with Dr. Kasprisin and other ATSF staff regarding their concerns about quality control and the lack of response shown by Belcher and Turner when they voiced their concerns. Following the conference calls, Plaintiff alleges he joined in drafting, editing, and signing a June 26, 2005 letter to the FDA, disclosing irregularities he observed in the donor recovery and requesting an independent audit by the FDA. Several other ATSF employees joined in this letter, including Dr. Kasprisin, Kozloski and Noyes.[2]

---

[1] Kozloski fired an ATSF Procurement Director, Michael Slack, for falsifying a medical record. Turner immediately rehired Slack, who was his foster son, at LifeShare in a quality control position that included reviewing ATSF files.

[2] These three employees were fired by ATSF and all three sued the company in federal district court in Minnesota for wrongful termination. (*See* Doc. 87-3.) The Minnesota district court granted ATSF's motion for summary judgment against Noyes because he failed to present any evidence that Turner had knowledge of Noyes' statutorily protected report, and he was not fired until almost four months after the FDA letter was sent. ATSF's motion for summary judgment was denied on the wrongful termination claims of Kozloski and Dr. Kasprisin. The Minnesota district court found a genuine issue of material fact existed as to whether ATSF's proffered reasons for firing Kozloski and Dr. Kasprisin were pretextual because of the "temporal proximity" between the reports and the terminations; they were terminated by Turner within days rather than months after the FDA letter was sent. ATSF later settled the wrongful termination claims of Kozloski and Dr. Kasprisin. The Eighth Circuit recently affirmed the district court's adverse grant of summary judgment on Noyes' claim. *See Noyes v. American Tissue Services Foundation*, 2009 WL 305571 (8th Cir. Feb. 10, 2009) (per curiam).

Turner testified that he did not know about the letter to the FDA until December 2005, after Plaintiff's termination, but Plaintiff testified that he informed Mr. Turner of the telephone conference calls and the letter to the FDA in July, 2005.

> Q: Do you have an understanding of when you called Bob [Turner], was it close in time to this July 15 e-mail?
>
> A: Again, I don't remember exact dates on anything, and I don't know - - I don't know. I don't remember - - I just remember - - if - - if this is what I'm - - if this is what he's talking about, it was, you know, brought up that - - because I - - I barely spoke with him. That's why I say I think it seems to be when I talked to him about that conference call.
>
> Q: And what do you recall telling Bob [Turner] when you called him?
>
> A: That I was on the phone for 17 hours total over the course of two days with every staff member, and basically every - - every staff member other than per diem staff in the country in regards to observations and telling them that, you know, I told these - - told these people this and that - - that, you know, a letter is being drafted to contact the Food and Drug Administration about this and - - but I also, like I said, kind of see why I covered my butt on and told them that I wanted to still be part of it.
>
> Even though I had been part of drafting the letter, I still wanted to be part of the future of that organization because I believed in tissue banking so much.
>
> Q: And how did he respond when you told him this? Do you recall anything he said in that conversation?
>
> A: I don't. I don't. Probably - - in looking at the e-mail, you know, I think we need to get you down to Oklahoma City is what I remember.

(Smoot depo. at 141-42.)

Somehow a copy of Plaintiff's report of his tissue recovery observations also made it into the hands of the American Association of Tissue Banks ("AATB"), an organization which accredits tissue banks. In September, 2005, AATB sent a letter to ATSF asking for information about the issues raised in Plaintiff's report. Turner's assistant, Nora White, asked Plaintiff for a copy of his report, and asked him who else had been provided with a copy of it. After Plaintiff gave White a

4

copy of his report, ATSF employees prepared and sent a letter to the AATB responding to each of the findings made in Plaintiff's report.

On or about November 30, 2005, Belcher called Plaintiff and told him that his employment with ATSF was terminated due to financial constraints. The record shows that ATSF had financial problems at the time of Plaintiff's termination. In mid-October 2005, Osteotech told ATSF that the amount of money ATSF could expect from Osteotech for the expansion would be limited and cut off by December 31, 2005. Osteotech asked ATSF what steps it was taking to cut costs because ATSF could not survive with its then existing structure. Turner's response was that he would have to cut positions. Turner told Osteotech that he would terminate Plaintiff and another employee, Penny Hamilton. Ms. Hamilton was fired because her location was distant from ATSF's Oklahoma City location, her workload was not full time, and her work could be handled by staff in Oklahoma City. ATSF also terminated Kimberly Britt-Ward on November 16, 2005. Prior to that, another employee's salary was reduced. In May 2006, ATSF terminated its finance officer in conjunction with closing its Indiana office.

The FDA inspected ATSF in March, 2006, four months after Plaintiff's termination. Every donor record reviewed by the FDA contained multiple errors. The FDA also found numerous violations of the standard operating procedures and concluded that the quality assurance program was not ensuring that safe tissue practices were being established and followed. The FDA concluded, in part, that ATSF did not have a sufficient number of employees to ensure compliance with the requirements.

Plaintiff claims the reason given for his termination was a pretext for ATSF's decision to terminate him in retaliation for having been involved in the report to the FDA, and for his report of problems with tissue recovery to Belcher. ATSF argues that it is entitled to summary judgment on Plaintiff's claims because he was terminated solely for financial reasons.

5

**DISCUSSION**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

Once the moving party has met its burden, the non-moving party may not rest on the allegations of its pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 257; *City of Mt. Pleasant v. Associated Elec. Coop., Inc.*, 838 F.2d 268, 273-74 (8th Cir. 1988). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A.   <u>Whistleblowing Exception to Employment at Will</u>

Plaintiff alleges that he was discharged in violation of public policy and thus has a claim for wrongful discharge. Under South Dakota law, "[a]n employment having no specified term may be terminated at the will of either party on notice to the other, unless otherwise provided by statute." SDCL § 60-4-4. Exceptions to the employment at-will doctrine are narrowly construed under South Dakota law. *See Petersen v. Sioux Vally Hosp. Ass'n*, 486 N.W.2d 516, 520 (S.D. 1992).

6

In order to prevail in a case such as this, a plaintiff must establish that the "motivation for his termination contravenes a clear mandate of public policy." *See Johnson v. Kreiser's Inc.*, 433 N.W.2d 225, 227 (S.D. 1988). In *Johnson*, the South Dakota Supreme Court stated that an individual has an action for wrongful discharge when "the employer discharges him in retaliation for his refusal to commit a criminal or other unlawful act." *Id.* In *Dahl v. Combined Ins. Co.*, 621 N.W.2d 163 (S.D. 2001), the court expanded the public policy exception to include cases in which the plaintiff was terminated for reporting unlawful or criminal conduct to a supervisor or outside agency, essentially whistleblower protection. *Id.* at 167. The plaintiff insurance agent in *Dahl* was entitled to whistleblower protection because he was terminated after he reported to the South Dakota Division of Insurance that some agents within his company had not remitted premiums. The South Dakota Supreme Court said that whistleblowing must serve a public purpose in order to be protected. "So long as employees' actions are not merely private or proprietary, but instead seek to further the public good, the decision to expose illegal or unsafe practices should be encouraged." *Id., quoting Wagner v. City of Globe*, 722 P.2d 250, 257 (Ariz. 1986). The whistleblower exception to at-will employment was recognized again by the South Dakota Supreme Court in *Anderson v. First Century Federal Credit Union*, 738 N.W.2d 40, 48 (S.D. 2007). *Anderson* involved a claim for wrongful termination based on constructive discharge of the plaintiff, a former credit union employee, who reported another employee's suspicious account activities to one member of the credit union's board of directors. When that board member failed to conduct what the plaintiff believed would be an adequate investigation, the plaintiff resigned because of what he felt to be an intolerable work environment. The South Dakota Supreme Court assumed that the plaintiff acted out of concern for the credit union and its members, and that he had sufficient reason to believe "criminal" or "wrongful" activity was occurring. *Id.* at 46. Even though the plaintiff was entitled to whistleblower protection, the court rejected his wrongful discharge claim because there was no evidence he was constructively discharged.

In support of its motion for summary judgment, ATSF first argues that Plaintiff's reporting of unsafe tissue recovery procedures cannot be considered whistleblowing because South Dakota's whistleblower exception applies only to those who report the commission of a crime, and Plaintiff

7

reported only what amounts to simple misconduct of co-employees. ATSF compares this case to this Court's decision in *Meyers v. American States Ins. Co.*, 926 F.Supp. 904 (D.S.D. 1996).[3] Meyers, a sales manager, complained about a co-worker's performance to his supervisors. When he found out the co-worker was dating one of the supervisors to whom he had complained, Meyers spoke to the Vice President in charge of Personnel and was told it was permissible for co-workers to date. Meyers claimed he was fired as a result of his complaints about his co-worker's performance and her relationship with a supervisor. This Court found that Meyers' reports did not involve illegal or criminal acts "as required for South Dakota's application of the public policy exception" which was the state of South Dakota law at the time. This Court also noted that even if South Dakota courts were to recognize the whistleblowing exception, complaints about a co-worker's performance would not rise to the level of whistleblowing. *Id.* at 911.

In contrast to Meyers' inter-office complaints about a co-worker's ability to make sales and her romantic relationship with another employee, Plaintiff reported violations of SOPs and unsafe tissue recovery practices to the FDA, practices which could compromise the public health and welfare. The purpose of the FDA regulations is to ensure the safety and general welfare of the public by requiring tissue removal procedures meet certain minimum safety requirements to prevent the introduction, transmission, or spread of communicable diseases.[4] The tissue recovery agency must establish and maintain procedures to comply with current good tissue practices. *See* 21 C.F.R. § 1271.180. Belcher explained in her deposition that ATSF has at least 500 pages of standard operating procedures to comply with FDA requirements. Belcher said tissue recovery businesses are closely regulated and monitored in order to protect public safety. She agreed, for example, that if ATSF failed to test tissue for HIV and that HIV-infected tissue were implanted, it could transmit HIV to the recipient. No evidence has been produced to contradict Plaintiff's claim that violations of standard operating procedures constitute violations of FDA regulations.

---

[3]*Meyers* was decided before the South Dakota Supreme Court had recognized the whistleblower public policy exception to the employment-at-will doctrine.

[4]"Communicable diseases include those transmitted by viruses, bacteria, fungi, parasites, and transmissible spongiform encephalopathy agents." 21 C.F.R. § 1271.150.

In its Reply Brief in Support of Defendant's Motion for Summary Judgment, ATSF argues that only reports of criminal conduct are protected, and that alleged violations of ATSF's standard operating procedures, or even violations of the federal regulations referred to in the depositions and pleadings in this case, do not constitute unlawful acts that would trigger whistleblower protection. The Court disagrees because it does not believe that the South Dakota Supreme Court would exclude serious health and safety concerns from whistleblower protection. The health and safety violations that allegedly occurred at ATSF are just the type of wrongful behavior courts hoped would be reported by employees if they no longer had to fear of retaliation by their employers. The evidence shows that Plaintiff acted in good faith and with the public interest in mind. Reports such as Plaintiff's are the type that should be encouraged and protected by the whistleblower exception to at-will employment in South Dakota.

Next, ATSF argues Plaintiff's report and actions challenging other employees to improve tissue recovery procedures cannot be considered whistleblowing because they were part of his job responsibilities. This argument ignores the fact that Plaintiff also participated in reporting safety violations to the FDA. There is no evidence that this was one of his job duties. The public policy of protecting employees from retaliatory discharge is to encourage exposure of illegal or unsafe practices in order to further the public good. *See Dahl*, 621 N.W.2d at 167. If Plaintiff was fired for reporting to the FDA, then he is entitled to whistleblower protection.

In summary, the Court finds that when viewing the facts in a light most favorable to Plaintiff, he states a cause of action pursuant to *Dahl* for wrongful discharge in violation of public policy.

B.  Causal Connection Between Whistleblowing and Termination

ATSF contends there was no connection between Plaintiff's reports to the FDA and his termination. According to ATSF, Plaintiff was fired to cut costs, and there is evidence that ATSF was having financial difficulties and was down-sizing at the time of Plaintiff's termination. To avoid summary judgment, however, Plaintiff need not show that ATSF's retaliatory motive was the only reason for his termination. *See, e.g., Lord v. Hy-Vee Food Stores*, 720 N.W.2d 443, 450-53 (S.D.

9

2006) ("In defining that causal link courts have not required a claimant to prove that the protected activity was the sole cause of the adverse employment action.") In contrast to Noyes in his Minnesota whistle-blower action against ATSF, Plaintiff in this case has come forward with evidence to create an issue of fact whether Turner knew or suspected Plaintiff "blew the whistle," and whether that was a reason Plaintiff's employment was terminated.

Turner said he did not know about the June 26, 2005, FDA letter until after Plaintiff's termination. Plaintiff testified he told Turner about the conference calls and the letter to the FDA during a telephone call with Turner sometime in July, 2005. ATSF argues that Plaintiff's testimony about the July telephone call with Turner "is inconclusive, at best, stating that he did not remember 'exact dates,' barely spoke with Mr. Turner, and did not remember if that was what they were talking about." (Doc. 86, Defendant's Reply Brief, at p. 6, fn 3.) This is a factual dispute which hinges on the credibility of the witnesses, and which raises a genuine issue of material fact for trial. It is for the jury, not the Court, to decide what testimony to believe or disbelieve. *See Henderson v. Munn*, 439 F.3d 497, 503 (8th Cir. 2006) ("[I]t is not [the court's] function to remove the credibility assessment from the jury.") If the jury believes Plaintiff, he will have shown that Tuner, the decision-maker, had knowledge of Plaintiff's protected activity. There also is evidence that Turner knew Plaintiff had reported regulation violations to others outside ATSF before Turner terminated Plaintiff's employment. In September, 2005, the AATB sent a letter to ATSF raising some of the same health and safety concerns addressed by Plaintiff in his report. Turner's assistant, Nora White, then asked Plaintiff for a copy of his report. ATSF responded to AATB by refuting or addressing Plaintiff's findings. Furthermore, every employee whose name appeared on the letter to the FDA is no longer working at ATSF, while two employees who participated in the telephone conference calls but decided not to include their names on the letter to the FDA are still employed by ATSF. The record also reveals ATSF hired additional employees to help ensure compliance with safe tissue practices after Plaintiff's termination. With this evidence, Plaintiff has raised a genuine issue of fact regarding the reason for his termination, and ATSF is not entitled to summary judgment.

C.     Punitive Damages

The South Dakota Supreme Court recently recognized that an action for retaliatory discharge lies in tort rather than contract. *See Tiede v. Cortrust Bank, N.A.*, 748 N.W.2d 748 (S.D. 2008). Accordingly, a punitive damage claim is available to Plaintiff in this case. Another argument advanced by ATSF for granting summary judgment on the punitive damages claim is that there has been no showing of malice on its part. The South Dakota Supreme Court explained that malice required to support a punitive damages award, can be either actual or presumed, legal malice. *See Isaac v. State Farm Mut. Auto. Ins. Co.*, 522 N.W.2d 752, 761 (S.D. 1994). Presumed, legal malice, is "malice which the law infers from or imputes to certain acts," *id.*, and "can be shown by demonstrating a disregard for the rights of others," *Biegler v. Am. Family Mut. Ins. Co.*, 621 N.W.2d 592, 605 (S.D. 2001). "Malice as used in reference to exemplary damages is not simply the doing of an unlawful or injurious act, it implies that the act complained of was conceived in the spirit of mischief or of criminal indifference to civil obligations." *Dahl v. Sittner*, 474 N.W.2d 897, 900 (S.D. 1991) (quoting *Hannahs v. Noah*, 158 N.W.2d 678, 682 (S.D. 1968)). Evidence has been produced in this case to show that Plaintiff and other ATSF employees may have been wrongfully terminated for reporting health and safety concerns to the FDA. Based upon this evidence, the record is sufficient enough to survive ATSF's summary judgment motion on the issue of malice. Accordingly,

IT IS ORDERED that Defendant's Motion for Summary Judgment is denied.

Dated this 20th day of February, 2009.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY _____
(SEAL)      DEPUTY

11